Good morning, Justices. This is Todd Stubbs. I represent Mid-Continent Casualty. I am the appellant and also cross appellee in this matter. Can everybody hear me? We can hear you just fine. You have 10 minutes per side. If you would you like to reserve any part of that for your rebuttal? I would like to reserve at least two minutes, please. All right. I'll try to help watch the clock and you can as well. Please proceed. All right. Thank you. Justices, this case involves an underground salt water disposal line that was situated in eastern Montana. The line as we'll call it was being utilized for oil well pumping operations and ran from the oil pumping operations to a disposal facility. The purpose of the line is that when oil is pumped up to the ground, both water and oil comes to the ground and there is mechanisms that are used to separate the water from the oil. Once the water is separated from the oil, the water is of course dirty and needs to be transported back to be used again in other operations with oil pumping. This case involves the line that ran over under Joseph Pickard's property. On the Pickard property an excavator was hired to excavate a trench in order to facilitate a water and sewer line that was going to be installed on that particular piece of property. The defendant, Mr. Enkelke, was the excavator. Mr. Enkelke, in fact, did do his notification due diligence and did find some facilities, underground facilities, that were located on the Pickard property. Of import, the line, the salt water disposal line, was not one that had been registered with the one called Notification Center. Mr. Enkelke proceeded to do the excavation after marking due diligence and in those operations, he made contact with the line, damaging the line. Council, you don't have a lot of time and we're all, I think, pretty familiar with the facts of the case, so maybe jump, if you don't mind, to what your position is on the legal issues. Yeah, particularly the causation, given that we do have a jury verdict here. Okay, the purpose of me filing this appeal had to do with the fact that it is McConnell's position that the federal district court could have made a determination and was mandated to make a determination that the cause of the release of the salt water was solely caused by the excavator, Enkelke, and the argument is that this particular issue should have never went to the jury, that there was only one conclusion that could have been reached as to who caused the actual release of the salt water. How can that be true? I mean, when I read this, it sounds like something I might have gotten in law school in my torts class about, you know, you literally could have gotten a hypo that says somebody was negligent in failing to report that they had this line, and somebody else did something and then acted negligently afterwards. Who was the cause of it? And I think you'd say, well, it has to go to a jury because there's mixed causation here, and it's up to a jury to kind of figure out contributory issues. It seems like the black letter law case is that way, so I didn't quite get your argument that it could only, I understand that I'm going to say his name wrong, but that Mr. Enkelke was the last person. He had the last, best chance, so to speak, to try to stop this maybe by reporting it, but you don't disagree that Mitt Conant was also negligent in not reporting their line to the One Call Center, so it's just, it's mixed negligence. Well, I guess the way, Your Honor, I guess the way that I looked at this case in terms of filing the motion for summary judgment is there were two damage events. The first damage event was on Mitt Conant in terms of the damage, actual damage to the line, the cost of repairing that line because they were not registered with the One Call Notification Center. That, there's two particular damages here. The damage to the line, and then the second damage is actually the real property damage as a result of the release. It's important to note that at the time that Mr. Enkelke struck the line, the line was not charged with salt water, and so if Mr. Enkelke would have done his statutory requirements, that line would have been fixed before it was charged some months later. Well, he disagrees with that, right, because, I mean, he might have called the One Call Center, and since your client wasn't signed up, the One Call Center might have been like, we don't have anything here, so we think it's an abandoned line also, and then we'd still be right where we're sitting. So again, I don't see, I mean, this is the kind of thing a jury needed to sort out. Well, the facts showed, and they weren't disputed, that if indeed it only took a couple hours to locate the owner when the release was actually discovered, and the owner of the facility testified in deposition and are in the exhibit that if he would have been contacted, he would have come and repaired the line, and in fact did come and repair the line immediately after it was discovered that there was a salt water release. But doesn't all that kind of pass out of the case once we have a jury verdict here? And I didn't see challenges to how the causation instructions were given that would somehow change the analysis. But of course, I'm interested in your position on that. Well, what Nick Cotton's position is, is that the determination should have been made at the time of the discovery, and not have gone to the jury. And that's the position that we're taking on a procedural, with the procedural posture that we find ourselves. That the federal district court had ample facts which were undisputed, and as a matter of law, could have determined that the actual property damage, not damage to the line, but the actual property damage, was caused solely by the excavator, not following through with the statutory requirements to contact the one called notification center or the owner. I mean, it's pretty damning to your position that when it actually go to a jury, a jury found exactly the opposite. So I don't, that's the difficulty, I think. I don't know. I see you're down to your two minutes. Yeah, you may want to save your two minutes, Mr. Stubbs. I will. Thank you very much, Janice. Good morning, your honors. Mr. Stacey, why did you cross appeal? Well, I just made a note down here, Judge Van Dyke. I did so out of abundance of caution and never being able to predict after 42 years of doing this, how things turn out either at trial or on appeal. So I raised that because I truly thought perhaps Judge Waters, our fine district court judge out here, had maybe misinterpreted the statute at issue in finding my client negligent as a matter of law. I raised that as a cross appeal. You know, as I was preparing for argument, I thought, yeah, maybe I didn't need to do that. Because as the court has already commented, this went to a jury. Are you dropping the cross appeal? No, no. I'm only raising it, if the court for some reason decided that mid-continence appeal had some merit in some respect. Yeah, because there's a reason I'm asking you that. I think you've answered it, but I didn't know if there's some problem for your client that the court found your client negligent, but that the negligence ultimately didn't cause any harm. If that's a problem for your client that you need to get that wiped clean, but it doesn't sound like it is. As long as the jury ruling stays in place, it's not a problem. Yeah. No, you're right, Judge. It's not anything that affects his business up in northeastern Montana where he continues to excavate for a living. It was just that looking at the statute for further guidance, I thought if we got that far, I'd be asking this court to decide whether or not the district court's interpretation of the notification statute made any sense in light of the most significant factor in this case, which is that mid-continent through its insureds failed to comply with the statutory requirement to be a member of the OneCall Notification Center. But with that to the my argument's very simple. As you said earlier, Judge Waters is a very good judge, and I think maybe she might have gotten that question right, too, but it sounds like you don't think we need to read that. Well, she might not have, actually, but does it matter? It doesn't matter if I knew if you were going to affirm the jury's verdict, then I wouldn't be talking about it. But, you know, the jury went out after three days of listening to testimony, and as the court noted, there's no appeal of jury instructions. The negligence instruction was given to the jury without objection, which is the standard one here in Montana as well, where it says, you know, that you have to act as a reasonable person under the circumstances. But it really was irrelevant because both parties have been found and determined by Judge Waters to be negligent as a matter of law. So the jury, after three days of listening to this and being properly instructed, they went out, and it's part of my supplemental excerpts. I think it's page 108. It's a minute entry. They went out at 12.40 p.m. during the noon hour. Didn't even have lunch. They came back 37 minutes later at 1.17 with answering the special verdict. First question, was Allen's negligence a cause of mid-continence damages? And they said no. They did it in 37 minutes. So mid-continent on appeal, contending that somehow Judge Waters should have found as a matter of law that my client's negligence in violating a statutory provision somehow at reasonable minds of men and women on this jury should have concluded that our negligence was a cause. Well, the fact remains is a fair trial was conducted here in Billings, and the jury went out in 37 minutes after listening to all of the testimony, none of which is being raised on appeal as being introduced in error, and they concluded, unlike mid-continence argument, that reasonable men and women found the other way. So one of the justices made that comment, as I see that as a huge, huge problem for mid-continent in prevailing on their appeal, because this was a jury question. The way Judge Waters set it up, both parties were determined to be negligent, and the causation issue had to be determined by the jury. And as we know, in real life, after this trial was presented and fairly presented on behalf of mid-continent, 37 minutes is all it took for this jury in Billings, Montana, to come back and say, mid-continent, no, you lose. Maybe they wanted to go to lunch. There's an alternative explanation. Well, Your Honor, most of the time my juries at least will order the food from, it's called Tiny's Tavern, it's great chicken here in Billings, but they elected not to, and they wanted to get home. We don't have a trial transcript, but this case was tried fairly, and the fact remains that my client is out in the middle of northeastern Montana. It's beautiful. I attached a couple of photographs of the area in question. We're not downtown Billings or Seattle or anywhere else. Pages 111 and 112. He's out doing his work. He did everything that he's supposed to as an excavator in Montana. He called one call, got the ticket. Of course, mid-continent insureds didn't take the time to be a member of one call. He didn't do everything he was supposed to do, because he didn't, but let's, I don't know. Well, Your Honor, on that subject, if what you're talking about is he didn't stop and call one call, well, if he called one call, there's no information. And for him to, the part that I raised on appeal is, I don't believe the statute imposes upon an excavator in Montana to stop his excavation or her excavation procedures. Look around, try to figure out out in the middle of northeastern Montana who might own this line that appears to be abandoned. And the property owner, Joe Pickard, his testimony at trial was very clear, and I included it in our shit. I just cover it up and keep going because it's abandoned. There had been a construction company out there called Franz Construction out of the Miles City area. They dug a hundred holes and chopped up a bunch of old lines that come from abandoned oil wells out in that area. So the bottom line is, Your Honors, I contend that Mid-Continent got a fair trial. The jury disagreed that I would ask this court not to substitute its opinion, whatever that might be, in place of the jury that had the front row seat to listen to this case and made a decision in a very short period of time with proper instructions being given to them. And by the way, we were, right or wrong, we were determined to be negligent for not calling one call or trying to locate the owner. And my contention on the cross appeal is pretty simple. That statute, when you read the entire statute in its entirety, it only applies if someone is a member of the One Call Notification Center. Otherwise, it's imposing a duty upon an excavator to do an investigation that could last days and days to determine where this line came from and who might own it. This line came from, called the Anvil Well, which is about five miles away from where the excavation was taking place. So our contention was the court should have, the district court should have said, failure to be a member of the One Call is the sole cause of your own damages. Had you complied with that statutory requirement, this wouldn't have happened. And I believe that's what the jury concluded. Mid-Continent was allowed to argue all of this in front of the jury. Everything that they're alleging on appeal that somehow you should reverse, they got to argue this. They got to talk about our negligence. They got to make the argument that we were the last, it's not a doctrine in Montana anymore, the last clear chance to prevent the damages from occurring. All of that was argued. It was presented to the jury. And you know, in sum, your honors, I would respectfully request that the court give deference to the jury out here in Montana that had the opportunity to hear all of the testimony, all of the evidence were properly instructed. Everything that was presented gave Mid-Continent its chance to be, you know, to collect $150,000 from my client who was out there complying with the law as best he could. And then he gets trapped at the end by saying he should have called one call. And they would have said, as there was some testimony, what are they going to say? We have the one call ticket. It doesn't show Mid-Continent's insured on it. So what are they going to do? And by the way, I would have, I argued that the plaintiff had a duty, the burden of proof in this case to prove that some other result would have occurred. And that's the evidence that would suggest that if Alan would have called one call or done something else, this, these damages wouldn't have occurred. So I think my 10 minutes is up. Thank you so much for your time. Thank you. Mr. Stubbs, you have some time for rebuttal. Yes, it'll be very brief. This is exactly what I didn't want to happen in terms of bringing in what the jury decided. The whole reason for bringing this appeal was on a procedural argument that the federal district court had ample undisputed facts to make a determination on causation based upon the damages of the release itself. And if, if we, if we're going to look at, we did, I did not appeal the procedures that went along in terms of admission of evidence or, or jury conduct or there's no appeal on the, on how the trial was procedurally conducted. The whole issue is under rule 56 as to whether or not the federal district court should have made a determination on causation. That's something that's in the briefing. That's something that you honorable justices will have to decide. And I asked that, that the determination as to summary judgment being denied on causation and just on the causation issue be reversed. Thank you. I thank both counsel for your argument this morning. We could hear you quite well through the telephone connection. The case of Midcontinent versus Engelke is submitted. And I also note Mr. Stubbs that you're from Manhattan, Montana, which I just love the name of having a Manhattan, Montana. But I grew up, I grew up in Manhattan for a few years. I actually went to Manhattan middle school. So that's great. Well, that's my home state of Wyoming down there. At least that Gallatin County does. So anyway, thank both counsel for your argument today. And we're now adjourned. Thank you. Thank you. Thank you, Your Honor. This court for this session stands adjourned.
judges: McKeown, Caldwell, Vandyke